IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

GJ RANCHES, LLC,

      Plaintiff,

    vs.                                                        1:24-cv-00897-KWR-KK

LUMBERTON MUTUAL DOMESTIC
WATER CONSUMERS ASSOCIATION and
FILE CONSTRUCTION LLC,

      Defendants.

## MEMORANDUM ORDER AND OPINION GRANTING DEFENDANT LUMBERTON MUTUAL'S PARTIAL MOTION TO DISMISS

THIS MATTER comes before the Court on Defendant Lumberton Mutual Domestic Water Consumers Association's Motion to Dismiss Tort and Contract Claims (**doc. 28**) (*hereinafter* Defendant or LMDWCA). Defendant argues that it is statutorily immune from all the claims which Plaintiff alleges against it, and that Plaintiff has therefore failed to state any claim upon which relief could be granted. Having considered the applicable law and the parties' briefings, the Court finds that Defendant's motion is **well taken** and is therefore **GRANTED**.

### BACKGROUND

      This lawsuit arises from a longstanding and contentious relationship between Plaintiff and Defendants involving several lawsuits and allegations of threats. **Doc. 30**. In 2017, Plaintiff purchased 1,060 acres of ranch land in northern New Mexico located about ten miles north of the town of Lumberton (the "Ranch"), which Plaintiff operates the Ranch as a working ranch and raises cattle and operates a small wilderness guide operation. **Doc. 1 at ¶1**. In 2018, Plaintiff

1

restored the portion of the Navajo River which runs through the Ranch, along with other parts of the Ranch, to allow wildlife, fish, and the natural environment to flourish. *Id.*

Defendant LMDWCA is a small water association which provides drinking water to the town of Lumberton. *Id.* at ¶ 2. Defendant operates its water treatment plant within the boundaries of the Ranch on a small easement adjacent to the banks of the Navajo River and draws a significant portion of the water it treats for delivery to customers from the Navajo River. *Id.* Defendant does so via a right-of-way easement. *Id.* at ¶ 11. The express purpose of the easement is to provide a site on which Defendant "produce, treat, pressurize, handle and deliver a safe and potable drinking water supply fit for human consumption" to the public in Lumberton, New Mexico. *Id.* at ¶ 12. The easement does not, however, expressly grant a right of access to the easement area. *Id.*

In the summer of 2023, a storm raised the level of the Navajo River and the speed at which it flowed, resulting in the deposit of debris near the entrance to the LMDWCA river water intake apparatus. *Id.* at ¶ 2. On January 18, 2024, LMDWCA informed Plaintiff via an email "courtesy notice" that the LMDWCA would be "clearing and removing the accumulated debris on the Navajo River and will also be performing work in and around the wet well in the channel beginning on Monday, January 22, 2024." *Id.* Defendants LMDWCA and File Construction began construction on January 22, 2024, to repair the damage, using large semi-trucks carrying huge quantities of gravel and heavy construction equipment to excavate soil and rock along and within the Navajo River. *Id.* Plaintiff alleges neither Defendant took steps to mitigate the damage, and subsequently damages portions of river and road on Plaintiff's property, including the improvements Plaintiff had previously constructed. *Id.*

Plaintiff notified Defendants that there had been significant damage done to the Ranch and sought a meeting prior to filing litigation. ***Id.* at ¶30**. At that meeting, representatives and counsel of all three parties met, during which the following conversations allegedly took place:

1. Defendants represented that the Ranch would be returned to the condition in which it had been prior to the damage caused by the Work.
2. Defendants orally agreed to take specific steps to limit damage to Plaintiff's property.
3. Defendants agreed that any part of the Ranch damaged or altered, including the area within the Easement Property, would be restored to the condition or state in which it existed prior to commencement of the Work.
4. Counsel for LMDWCA agreed that LMDWCA would provide Plaintiff with copies of all permits obtained for the Work, including any permits issued by the U.S. Army Corps of Engineers and the New Mexico Environment Department. Defendants further agreed to record, by photographic and video media, the condition of the wet-well and infiltration gallery infrastructure that would be cleaned, maintained, repaired, or otherwise altered during the course of Work.
5. LMDWCA represented that it would entertain a written contract memorializing the oral agreement reached at the Meeting. Counsel stated that LMDWCA would hold a meeting and vote on a written contract, to be provided by Plaintiff.
6. Defendants agreed that they would limit the Work while the parties memorialized their agreements and determined the manners in which to best limit damage to the property.
7. Plaintiff would prepare a proposed agreement, memorializing the terms agreed upon at the Meeting, by which the Work could continue with an understanding of how the Ranch would be protected.

***Id.* at ¶33(a)–(j).**

Following the meeting, Plaintiff sent a proposed contract to both Defendants, but never received word back. ***Id.* at ¶¶34–35**. Defendants resumed work on the property the same day, allegedly disregarding any agreements reached in the meeting. ***Id.* at ¶36**. At no point did either Defendant restore Plaintiff's property after damage sustained because of construction. ***Id.* at ¶42**.

Plaintiff now alleges nine causes of action against Defendant LMDWCA: one claim for deprivation of civil rights under 42 U.S.C. §1983, five tort claims, including negligence, negligent misrepresentation, negligent hiring, fraud, and prima facie tort, and three contract claims, including breach of contract, promissory estoppel, and detrimental reliance. ***See generally* doc. 1**. Plaintiff

seeks compensatory damages, punitive damages, pre– and post– judgment interest, injunctive relief to restore the Ranch, attorneys' fees, and other costs. **Doc. 1 at 22–23**. Defendant argues that they are statutorily immune from liability to all of Plaintiff's claims except their 42 U.S.C. § 1983 claim. **Doc. 28 at 1**. Defendant thus asks the Court to dismiss Counts I, II, III, VI, VII, VIII, IX, and X. *Id.* The Court addresses each count in turn below.

## LEGAL STANDARD

Defendant fails to identify the Federal Rule of Civil Procedure under which they file their motion. **Doc. 28**; *see also* D.N.M.LR-7.1(a) ("A motion must be in writing and state with particularity the grounds and the relief sought."). However, Defendant routinely asserts that Plaintiff has failed to state a claim based on immunity granted to them by New Mexico state law. ***See generally id.*** The Court will therefore construe the pleading as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

Rule 12(b)(6) permits the Court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a plaintiff's complaint must have sufficient factual matter that, if true, states a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). As such, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). All well-pleaded factual allegations are "viewed in the light most favorable to the nonmoving party." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014). In ruling on a motion to dismiss, "a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kan. Penn Gaming, LLC v. Collins*,

656 F.3d 1210, 1214 (10th Cir. 2011). Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555.

## ANALYSIS

Defendant argues their motion in two parts: that Defendant is immune from Plaintiff's tort claims and that Defendant is immune from Plaintiff's contract claims. Defendant does not seek dismissal of Count V, which invokes 42 U.S.C. §1983. **Doc. 28 at 1**. The Court considers each set of claims in turn below.

I.     **Defendant is immune from Plaintiff's tort claims.**

First, the New Mexico Tort Claims Act expressly exempts governmental entities from various forms of tort liability. Defendant LMDWCA is a governmental entity within the definition of the statute and is therefore broadly immune from Plaintiff's tort claims.

The New Mexico Tort Claims Act "grants immunity from liability for any tort, except as waived by section 41-4-5 through 41-4-12, to governmental entities and public employees acting within the scope of duty." *Waltrip v. Ass'n of Mut. Prot.*, 2005 WL 8163941, at *4 (D.N.M. Apr. 20, 2005) (citing NM Stat. § 41-4-4). That waiver extends even further for community ditches and associations created pursuant to the Sanitary Projects Act ("SPA"), which "are excluded from the waivers of immunity of liability under sections 41-4-6 through 41-4-12." *Id.* These entities are subject to liability only for negligent operation of motor vehicles, aircraft, or watercraft. *Id.* (citing NM Stat. §41-4-13 and §41-4-5); NM Stat. §41-4-13 ("All community ditches or acequias, and their public employees acting lawfully and within the scope of their duties, and all associations created pursuant to the Sanitary Projects Act . . . are excluded from the waiver of immunity of liability under Sections 41-4-6 through 41-4-12 NMSA 1978.").

5

Both parties concede that Defendant is a government entity created pursuant to the Sanitary Projects Act.  **Doc. 1 at ¶4** ("Defendant LMDWCA is a New Mexico domestic sanitary project association formed under the Sanitary Projects Act, NMSA 1978, §§ 3-29-1 to -22."); **Doc. 28 at 1** ("Defendant LMDWCA is a mutual domestic association organized under the Sanitary Projects Act."); *Id.* **at 3** ("As a political subdivision of the state organized pursuant to the Sanitary Projects Act, Defendant LMDWCA is a governmental entity within the meaning of the Tort Claims Act."). Section 41-4-3 of the Tort Claims Act defines a governmental entity as, "all political subdivisions of the state and their agencies, instrumentalities and institutions and all water and natural gas associations organized pursuant to Chapter 3, Article 28 NMSA 1978." (emphasis added). Plaintiff alleged and Defendant LMDWCA admitted that LMDWCA is a mutual domestic water association organized under the Sanitary Projects Act, NMSA 1978, §§ 3-29-1 through 3-29-21. Water associations like Defendant are generally considered to be subdivisions of the state covered by the New Mexico Tort Claims Act and its waiver of liability. *Christiansen v. Rutherford Water Ass'n*, No. 14-CV-467 SCY/KBM, 2014 WL 11512596, at *1 (D.N.M. Nov. 20, 2014) (citing *El Vadito de los Cerrillos Water Ass'n v. New Mexico Public Service Com'n*, 858 P.2d 1263, 1270 (1993).  As a political subdivision of the state organized pursuant to the Sanitary Projects Act, Defendant LMDWCA is a governmental entity within the meaning of the Tort Claims Act.

As a governmental entity and an association created pursuant to the SPA, Defendant receives a significant amount of immunity under the NMTCA.  Per the NMTCA's waiver language, Defendant can only be subject to tort liability for negligent operation of motor vehicles, aircraft, or watercraft. *Waltrip,* 2005 WL 8163941, at *4; N.M. Stat. §41-4-5 (waiver of immunity for negligent operation of various vehicles); N.M. Stat. §41-4-13 (granting immunity for conduct described in §§41-4-6 through 41-4-12, thus waiving immunity for conduct described in §41-4-5);

N.M. Stat. § 41-4-4 ("Waiver of this immunity shall be limited to and governed by the provisions of Sections 41-4-13 through 41-4-25 NMSA 1978"). None of Plaintiff's claims involve facts within this very specific waiver of liability, but rather involve allegedly tortious squarely within the NMTCA's statutory immunity coverage. *See generally* **Doc. 1**.

The final question would thus be whether Defendant was acting within the scope of their public duty at the time of the alleged tortious conduct. N.M. Stat. § 41-4-4 ("A governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort except as waived."). Plaintiff asserts that this is a question of fact precluding the Court from granting a motion to dismiss. **Doc. 30 at 3**. However, Plaintiff erroneously relies on state law, thus misstating the standard. At the motion to dismiss stage, the court must assume the factual allegations in the complaint are true, not make determinations about whether there are genuine issues of material fact. *Kan. Penn Gaming, LLC*, 656 F.3d at 1214; *c.f.* Fed. R. Civ. P. 56 (a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").

"The purpose of the SPA is to improve the public health of the people of New Mexico by establishing sanitary domestic water facilities to supply water to rural unincorporated communities, which otherwise would likely have no means to procure usable water." *El Vadito de los Cerrillos Water Ass'n v. New Mexico Pub. Serv. Comm'n*, 1993-NMSC-041, ¶ 24, 115 N.M. 784, 791, 858 P.2d 1263, 1270. This includes the "acquisition, construction and improvement of water supply, reuse, storm drainage and wastewater facilities in communities, and to operate and *maintain* such facilities for the public good." N.M. Stat. § 3-29-3 (emphasis added). Plaintiff alleges in their complaint that Defendant provides drinking water to the town of Lumberton by operating a water treatment plant via an easement in order to "produce, treat, pressurize, handle

7

and deliver a safe and potable drinking water supply fit for human consumption" to the public." **Doc. 1 at ¶¶2, 11–12**. Doing maintenance on that facility with the hope of continuing to provide water to the public falls squarely within the purpose of the SPA. N.M. Stat. § 3-29-3. Taking the factual allegations in the Complaint as true, it seems clear that Defendant acted within the scope of their public duty during the allegedly tortious conduct and is thus entitled to statutory immunity.

Plaintiff's tort claims against Defendant fall squarely within the NMTCA's grant of immunity. Plaintiff has therefore failed to state a claim as to Counts I, II, III, VII, and X.

### II. <u>Defendant is immune from Plaintiff's contract claims.</u>

Second, Plaintiff has not stated any valid contract claim against Defendant LMDWCA because Defendant is statutorily immune from oral contract claims.

New Mexico law explicitly exempts governmental entities from *all* contracts claims not based in a valid written contract. NM Stat. § 37-1-23(A) ("Governmental entities are granted immunity from actions based on contract, *except actions based on a valid written contract*." (emphasis added)). This bars claims based in oral contracts. *Campos de Suenos, Ltd. v. Cnty. of Bernalillo*, 2001-NMCA-043, ¶ 13, 130 N.M. 563, 568, 28 P.3d 1104, 1109 (finding that "the legislature created the one condition that makes a lawsuit permissible: when it is based on a "valid written contract."). "Section 37-1-23(A) is not a mere defense to liability but instead an entire bar to suit, relieving the defendant from the burden of defending a trial on the merits." *Quarrie v. New Mexico Inst. of Mining & Tech.*, 2021-NMCA-044, ¶ 8, 495 P.3d 645, 649. "Section 37-1-23(A) applies to any cause of action based on contract or closely related to an action which *is* so based, including "actions touching upon questions of contract law. . . which might otherwise be characterized as seeking non-contract remedies (such as equitable remedies) . . . ." *Id.* at ¶9 (internal quotations omitted).

The parties do not dispute that LMDWCA is a governmental entity. **Doc. 1 at ¶4; Doc. 28 at 1**. The question thus becomes whether each of the three contract claims for breach of contract, promissory estoppel, and detrimental reliance fall within the statutory grant of immunity. The Court finds that each claim does and addresses them in turn.

Most clearly within the grant of immunity is Count 6, Plaintiff's claim for breach of contract. Plaintiff concedes that all its contract claims are based in oral contracts, and that there was no signed written contract. **Doc. 1 at ¶¶34–35**. Section 37-1-23(A) expressly requires a valid written contract. NM Stat. § 37-1-23(A); *Campos de Suenos, Ltd.*, 130 N.M. 563, 568. Where the Complaint alleges no existence of a writing which could be construed as a written contract between Plaintiff and Defendant, the Court must dismiss the claim. *Dominguez v. Fort Bayard Med. Ctr.*, No. CV 98-0320 JP/RLP, 1998 WL 36030340, at *2 (D.N.M. Sept. 30, 1998) )("Because NMSA 1978 § 37-1-23(A) precludes remedy for breach of an oral contract, Plaintiff has failed to state a claim upon which relief can be granted.").

Plaintiff's claim for promissory estoppel fares similarly for the same reasons. § 37-1-23(A) bars for promissory estoppel because they are not based in a written contract. *Bean v. Curry Cnty. Bd. of Cnty. Commissioners*, No. CV 10-443 JP/CG, 2010 WL 11619146, at *9 (D.N.M. Aug. 11, 2010) ("§ 37-1-23(A) necessarily precludes Plaintiff from stating a promissory estoppel claim without the promise at issue having been committed to writing."; *Davidson Oil Co. v. City of Albuquerque*, 545 F. Supp. 3d 1039, 1050–51 (D.N.M. 2021) ("Thus, to the extent that [Plaintiff] attempts to bring a promissory estoppel claim against [Defendant] based on an unwritten promise, its claim would fail."). This is because § 37-1-23(A) extends to equitable claims "touching upon questions of contract law." *Quarrie*, 495 P.3d at 649. Plaintiff's claim for promissory estoppel comes from the same set of facts on which Plaintiff bases their contract claim, thus dooming the

promissory estoppel claim. *Trujillo v. Gonzales*, 106 N.M. 620, 622, 747 P.2d 915, 917 (1987) ("We find no merit to [plaintiff's] equitable argument because the language of the applicable statute is clear. [Plaintiff] had no right to rely on the oral representations made to him here."); *Dickerhoof v. New Mexico Corr. Dep't*, 2002 WL 35649720, at *2 (D.N.M. Sept. 5, 2002).

Finally, the Court will also dismiss Plaintiff's claim for detrimental reliance for similar reasons. Detrimental reliance is not a standalone cause of action, but both New Mexico and federal courts require a writing when engaging in an equitable estoppel query. *See e.g.*, *Kilmer v. Goodwin*, 2004-NMCA-122, ¶ 28. 99 P.3d 690, 697 (explaining that the court has been willing to grant estoppel when a party relied on written assertions but not when the party relied on oral representations); *Beggs v. City of Portales*, 2013-NMCA-068, ¶ 30, 305 P.3d 75, 83 (considering city council minutes to determine whether representations were misleading or induced); (*Klaus v. Vill. of Tijeras*, No. CV 20-1105 JFR/KK, 2022 WL 1645947, at *20 (D.N.M. May 24, 2022) (collecting cases). The law's writing requirement is clear: "§ 37-1-23A does not waive sovereign immunity for oral contracts or oral promises." *Howes v. New Mexico Dep't of Health*, No. CIV 21-0263 JB/SCY, 2023 WL 1419832, at *35 (D.N.M. Jan. 31, 2023). Plaintiff cannot state a claim against Defendant without a writing on which it relied. *Dominguez v. Fort Bayard Med. Ctr.*, No. CV 98-0320 JP/RLP, 1998 WL 36030340, at *2 (D.N.M. Sept. 30, 1998) ("Therefore, in order for plaintiff to state a claim for breach of the covenant of good faith and fair dealing, the covenant itself, or the contract from which it is to be implied, must be in writing.").

The Court will therefore also dismiss Plaintiff's contract claims under the grant of statutory immunity because Plaintiff cannot state a valid claim against Defendant.

## CONCLUSION

The Court makes no ruling on the validity of Plaintiff's assertions that the NMTCA does not bar injunctive relief because Plaintiff did not state any claim upon which relief could be granted and made no motion for permanent or preliminary injunction. **Doc. 30 at 5**; Fed. R. Crim. P. 65.

Defendant's Motion to Dismiss (**Doc. 28**) is **GRANTED**. Claims Counts I, II, III, VI, VII, VIII, IX, and X against Defendant LMDWCA are dismissed **without prejudice.**

**IT IS SO ORDERED.**

_____/S/_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE