## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

———————————————

GJ RANCHES, LLC,

       Plaintiff,

    vs.                                  1:24-cv-00897-KWR-KK

LUMBERTON MUTUAL DOMESTIC
WATER CONSUMERS ASSOCIATION and
FILE CONSTRUCTION LLC,

       Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT LUMBERTON MUTUAL'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER comes before the Court on Defendant Lumberton Mutual Domestic Water Consumers Association's Motion for Summary Judgment (**doc. 40**) (*hereinafter* Defendant or LMDWCA). The Court previously dismissed Counts I, II, III, VI, VII, VIII, IX, and X against Defendant, **doc. 34**, and Defendant now seeks summary judgment on Count V, which alleges that Defendant deprived Plaintiff of their civil rights. Having considered the applicable law and the parties' briefings, the Court finds that Defendant's motion is **well taken** and is therefore **GRANTED**.

### BACKGROUND

In 2017, Plaintiff purchased 1,060 acres of ranch land in northern New Mexico located about ten miles north of the town of Lumberton (the "Ranch"). Plaintiff operates the Ranch as a working ranch and raises cattle and operates a small wilderness guide operation. **Doc. 1 at ¶1**. In 2018, Plaintiff restored the portion of the Navajo River which runs through the Ranch to allow wildlife, fish, and the natural environment to flourish (the "River Restoration Plan"). ***Id.***

Defendant LMDWCA is a small water association which provides drinking water to the town of Lumberton. *Id.* **at ¶2**. Defendant operates its water treatment plant within the boundaries of the Ranch on a small easement adjacent to the banks of the Navajo River and draws a significant portion of the water it treats for delivery to customers from the Navajo River. *Id.* Defendant does so via a right-of-way easement. *Id.* **at ¶11**.

The undisputed material facts before the Court are as follows: In 1998, Defendant acquired a Right of Way Easement, which included a portion or channel of the Navajo River, on Plaintiff's property from Plaintiff's predecessor. **Doc. 40 at ¶1; Doc. 40-1** (1998 Easement). The easement gave Defendant the right to install, operate, and maintain or remove a water system. *Id.* In 2007, the Easement was modified, and Defendant was granted a permanent easement to operate a full water system infrastructure and the accompanying facilities to deliver safe and potable water to the Lumberton area. **Doc. 40 at ¶3; Doc. 40-2** (2007 Easement).

In 2023, a storm damaged Defendant's water supply facility. *Id.* **at ¶4** (citing Doc. 1 at ¶¶18–19). Defendant hired File Construction, LLC ("File"), a co-defendant, to repair the damage. *Id.* **at ¶6**. The contract between the parties directs File to operate within the easement unless they obtained permission from Plaintiff. *Id.* **at ¶8; Doc. 40-3** (Repair Contract). Defendant provided File with the Easement and a copy of Plaintiff's River Restoration Plan. *Id.* **at ¶¶9–10; Doc. 40-4** (email between Defendant and File); **Doc. 40-7** (Email providing File with River Restoration Plan). Jamie Cruz, File's general manager, relied on Defendant's Easement to recreate the borders on the property. **Doc. 40-5 at 65-13 to 65-21**.

While repairing the damage to the property, Defendant stored equipment on the easement, and on a property that neighbors both the easement and Plaintiff's property. **Doc. 40 at ¶14**. According to Defendant, it was Plaintiff who interfered with their Easement in constructing the

River Restoration Project. *Id.* **at ¶17**. Specifically, Defendant alleges in their Motion that the River Restoration Project interfered with Defendant's use of the easement, destroyed Defendant's infrastructure, impeded Defendant's access to the river by destroying impoundment ponds, modifying ditches and channels, and placing rocks and other obstructions within the river and the easement. *Id.* **at ¶18**. Defendant also argues that neither they nor their contractors or agents improperly damaged or modified Plaintiff's property outside of the easement. *Id.* **at ¶21**.

The Court previously dismissed all pending tort and contracts claims against Defendant based on statutory immunity. **Doc. 34** (Order granting Defendant's partial motion to dismiss). Defendant filed this motion seeking summary judgment on the remaining civil rights claim. **Doc. 40**. Plaintiff did not file a timely Response to Defendant's Motion. **Doc. 45**; D.N.M.-LR 7.4 ("A response must be served and filed within fourteen (14) calendar days after service of the motion."). Plaintiff has made no showing of excusable neglect or good cause for the untimely Response, nor attempted to do so. *Id.*; *c.f. Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 896-97 (1990) (Under Rule 6(b), the court may, in its discretion and for good cause, accept late filings because the failure to file on time was a result of excusable neglect). When Plaintiff ultimately did file a Response, *id.*, Plaintiff did not properly dispute any of Defendant's material facts. *See* Fed. R. Civ. P. 56(c)(1)-(4); (e)(2) (when a party fails to properly address another party's assertion of fact as required by Rule 56(c), the court may consider the fact undisputed for purposes of the motion); *Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002) ("By failing to file a response within the time specified by the local rule, the nonmoving party waives the right to respond or to controvert the facts asserted in the summary judgment motion. The court should accept as true all material facts asserted and properly supported in the summary judgment motion."); *Durham v. Xerox Corp.*,

18 F.3d 836, 840 (10th Cir. 1994) ("[U]nexplained delay alone justifies the district court's discretionary decision.").

Based on Plaintiff's unexcused lateness and failure to dispute any of the material facts, the Court will take all facts contained in Defendant's Motion and properly supported in the record as admitted. However, "only if those facts entitle the moving party to judgment as a matter of law should the court grant summary judgment." *Reed*, 312 F.3d at 119. The Court must still therefore consider the validity of Defendant's Motion for Summary Judgment.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). As the Tenth Circuit has explained, "mere assertions and conjecture are not enough to survive summary judgment." *York v. AT&T*, 95 F.3d 948, 955 (10th Cir. 1996). To avoid summary judgment, a party "must produce specific facts showing that there remains a genuine issue for trial and evidence significantly probative as to any [material] fact claimed to be disputed." *Branson v. Price River Coal Co*., 853 F.2d 768, 771–72 (10th Cir. 1988) (quotation marks and citations omitted).

"A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1306 (10th Cir. 2017) (quotation marks and citation omitted).

When making this determination, the Court keeps two principles in mind. First, while the Court must draw all "reasonable inferences … in the light most favorable to the non-moving party*," id*. at 1261, that party's "version of the facts must find support in the record," *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009). Second, the Court's role is not to weigh the evidence or decide any issues of credibility, but to assess the threshold issue of whether a genuine issue exists as to material facts requiring a trial. *See Liberty Lobby*, 477 U.S. at 249, 255.

## ANALYSIS

The sole claim remaining against Defendant is Count V, which alleges that Defendant, a political subdivision of New Mexico, violated Plaintiff's civil rights by "temporarily and completely" depriving Plaintiff of the use of part of his land and of the Navajo River while Defendant completed construction. **Doc. 1 at ¶¶74–80**. Plaintiff alleges that Defendant did so without just compensation in violation of the Fifth Amendment's Takings Clause. *Id.* **at 83**. Because Defendant is a municipal entity, Plaintiff brought Count V under 42 U.S.C. § 1983.

The parties argue over what standard governs the Court's analysis. Both parties concede that Defendant is a government entity created pursuant to the Sanitary Projects Act. **Doc. 1 at ¶4** ("Defendant LMDWCA is a New Mexico domestic sanitary project association formed under the Sanitary Projects Act, NMSA 1978, §§ 3-29-1 to -22."); **Doc. 28 at 1** ("Defendant LMDWCA is a mutual domestic association organized under the Sanitary Projects Act."); *Id.* **at 3** ("As a political subdivision of the state organized pursuant to the Sanitary Projects Act, Defendant LMDWCA is a governmental entity within the meaning of the Tort Claims Act."). The Court will therefore take as undisputed the fact that Defendant is a municipal entity. *See* NMSA 1978 § 3-1-1 *et. seq.* (categorizing Defendant under "Municipalities").

Plaintiff argues that they have pleaded a standalone takings claim against Defendant and that the Court need not inquire into the municipal status of the entity allegedly violating their rights. **Doc. 45 at 3**.  However, Plaintiff misses a crucial part: municipal entities cannot be held liable solely for the constitutional violations of its agents or employees.  *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978).  And while Count V alleges civil rights violations by Defendant, the text of the Complaint focuses on damage done either by Defendant's own agents or by File.  **Doc. 1 at 73–84**.  Thus, in order to grant Defendant's motion for summary judgment, the Court must evaluate whether the undisputed material facts establish "1) the existence of a municipal policy or custom and 2) a direct causal link between the policy or custom and the injury alleged."  *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006) (citing *City of Canton, Ohio v. Harris,* 489 U.S. 378, 385 (1989)).  If the policy or action is facially lawful, Plaintiff "must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013).

Plaintiff has failed to make such a showing, and ignores its obligation to do so under *Monell*. ***See generally*** **Doc. 45**.  Defendant's material facts, which the Court must take as undisputed, do not show a situation giving rise to *Monell* liability.  *See Branson*, 853 F.2d at 771–72 (To avoid summary judgment, a party "must produce specific facts showing that there remains a genuine issue for trial and evidence significantly probative as to any [material] fact claimed to be disputed."); *Reed*, 312 F.3d 1195 ("By failing to file a response within the time specified by the local rule, the nonmoving party waives the right to respond or to controvert the facts asserted in the summary judgment motion.").

A. *The record does not indicate that Defendant had any sort of unconstitutional policy regarding repairs to its damaged facilities.*

First, the record does not indicate that LMDWCA had any sort of policy, lawful or unlawful, surrounding repairing damage to its facilities.

To establish municipal liability, a plaintiff must demonstrate that there was a policy in place that led to the constitutional violation. *Monell*, 436 U.S. at 694. Generally, a "challenged practice may be deemed an official policy or custom for § 1983 municipal-liability purposes if it is a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision." *Schneider*, 717 F.3d at 770.

"The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479 (1986) (emphasis in original). But Plaintiff does just the opposite: Plaintiff conflates the action of Defendant with the actions of File, who was acting as Defendant's agent at the time. Plaintiff has not produced evidence that the repairs on the easement were the result of a custom or policy of permitting unconstitutional deprivations of property. Neither the Complaint nor the undisputed material facts demonstrate that there was "a formally promulgated policy, a well-settled custom or practice, [or] a final decision by a municipal policymaker" to engage in unconstitutional takings. *Schneider*, 717 F.3d at 770.

Rather, Plaintiff's Complaint alleges a single incident—that Defendant deprived Plaintiff of his property unlawfully during repair work on the water treatment facility. **Doc. 1 at ¶77**. Proof of a single incident of unconstitutional activity is insufficient to impose *Monell* liability unless "proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *City of Oklahoma City v.*

*Tuttle,* 471 U.S. 808, 823–24, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985); *Butler v. City of Norman*, 992 F.2d 1053, 1055–56 (10th Cir. 1993). And "where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the policy and the constitutional deprivation." *Tuttle*, 471 U.S. at 823–24.

Plaintiff offers no evidence to counter Defendant's assertion that Defendant maintained no policy, constitutional or otherwise, around repairing its facilities. Without any countering facts, there is no evidence, much less "considerable" evidence that this single incident should give rise to *Monell* liability where Plaintiff cannot satisfy one of the factors. Plaintiff has made no showing that there was a policy in place or that the policy could be attributable to a municipal policymaker. *Branson*, 853 F.2d at 771–72 (Plaintiff must produce specific facts and significantly probative evidence demonstrating a genuine dispute). Thus, the Court must find that this factor weighs in favor of Defendant.

      B.   *There has been no showing of a causal link between Defendant's actions and Plaintiff's harm.*

Second, because Plaintiff has not alleged any sort of policy, Plaintiff also cannot show that there was a causal link.

To establish the causation element, the challenged policy or practice must be "closely related to the violation of the plaintiff's federally protected right." *Schneider*, 717 F.3d at 770 (citation omitted). Plaintiff satisfies this requirement where it shows that "the municipality was the 'moving force' behind the injury alleged." *Id.* "The causation element is applied with especial rigor when the municipal policy or practice is itself not unconstitutional, for example, when the municipal liability claim is based upon inadequate training, supervision, and deficiencies in hiring." *Id.*

Here, while Plaintiff pleads the claim against Defendant directly, the Complaint focuses on File's conduct: that File "used heavy equipment to dewater the river around the Island and to excavate portions of the river bed and banks," "excavated portions of the Navajo River and surrounding landscape, thereby adversely redirecting the local flow of the Navajo River," and "destroyed vegetation on the Island and the heavy equipment tracks created large ruts on the Island." **Doc. 1 at ¶¶23–28**. Plaintiff focuses on what File did "at LMDWCA's direction" and then alleges that this amounts to a deprivation of Plaintiff's civil rights by Defendant. *Id.* But even if this harm occurred and amounted to a constitutional violation, the undisputed facts demonstrate no policy, which means there is nothing to which Plaintiff can link their harm. Without evidence of a policy or final decision by a policymaker, to find a causal link would be to hold the municipality solely liable for the actions of File. *C.f. Pembaur,* 475 U.S. at 479 ("[M]unicipal liability is limited to action for which the municipality is actually responsible."). Thus, Plaintiff cannot satisfy the second *Monell* factor.

### C. The undisputed facts do not demonstrate that Defendant acted with deliberate indifference.

Finally, the record does not reflect that, even if Defendant has a facially lawful policy of repairing its facilities or using outside construction to do so, Defendant engaged in that policy with deliberate indifference for Plaintiff's rights.

"Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of [their] action[s.]" *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citation omitted); *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019). A municipality acts with deliberate indifference where it "has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Waller*, 932

F.3d at 1284 (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998)). Notice usually exists where there has been a pattern of tortious behavior, but deliberate indifference can exist absent a pattern where "a violation of federal rights is a 'highly predictable' or 'plainly obvious' consequence of a municipality's action or inaction." *Id.* These single instances, however, constitute only a "narrow range of circumstances." *Id.*

The record does not reflect any sort of deliberate indifference on Defendant's part. Neither the Complaint nor the undisputed facts demonstrate that there was an ongoing pattern of tortious behavior from Defendant's agents or from File when acting on behalf of the Defendant. *Waller*, 932 F.3d at 1284. This means that Defendant could not have had the actual or constructive notice that its actions in repairing the facility were substantially certain to result in a constitutional violation. *Id.*

Moreover, Plaintiff's own allegations demonstrate that its alleged harm stems from a single incident: "During the Work, LMDWCA temporarily and completely deprived Plaintiff of its use of the Island and the use of the Navajo River where LMDWCA directed File Construction to work." **Doc. 1 at ¶77**. However, absent a pattern of tortious conduct, which Plaintiff does not allege and the record does not reflect, this single instance would need to be one of the narrow circumstances in which "a violation of federal rights is a 'highly predictable' or 'plainly obvious' consequence of a municipality's action or inaction." *Waller*, 932 F.3d at 1284. But Plaintiff has made no such showing—it is not plainly obvious that a construction company acting on behalf of a municipality, which made every effort to operate within the confines of the easement, would violate Plaintiff's constitutional rights. Nor is it highly predictable that repairs on facilities on an easement would result in damage amounting to a taking. The record indicates that Defendant took great care to ensure that File operated within the confines of the easement, and that File both

understood and took seriously the boundaries of the easement. **Doc. 40 at 10; Doc. 40-5 at 65-13 to 65-21**. What appear to be routine repairs, without evidence to the contrary, do not rise to a level of deliberate indifference.

The record does not demonstrate that Defendant acted with the requisite mental state necessary to establish *Monell* liability. The Court will therefore grant Defendant's motion for summary judgment as to Count V.

## CONCLUSION

Defendant's Motion for Summary Judgment (**Doc. 40**) on Count V is **GRANTED**. All claims against Defendant LMDWCA are **dismissed.**

**IT IS SO ORDERED.**

_____/S/_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE